## Garmeada Coal Co. v. Marsee.

June 12, 1945.

Murray L. Brown for appellant.

H. F. White for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—
Affirming.

The appeal is from a judgment of the Bell Circuit
Court affirming an order of the Workmen's Compensation Board, which, in turn, adopted the findings and order of its Referee, Honorable Lawrence V. Drahman.
Since we concur in the opinion of the Referee, subject to
the modifications we have parenthetically inserted, we
will adopt his opinion, so modified, as the opinion of this
Court. It reads:

"The plaintiff, Dan Marsee, entered the employ of
the defendant, Garmeada Coal Company, on the 10th day
of November, 1939. He was hired as a night watchman
and it was his duty to protect the company's property,
particularly against fire and theft. The defendant had
provided time clocks at various places about the premises
and it was plaintiff's duty to make the rounds, and
punch the clocks at regular intervals.

"On the morning of August 17th, 1941, between the
hours of three and four o'clock A. M., plaintiff heard a
disturbance on the premises and upon investigation found

a man named Roscoe Gibson, who was intoxicated, and who claimed that he had lost some groceries. (The disturbance occurred between two and three o'clock A. M. The accident occurred between three and four o'clock A. M.) Gibson was blaming a man named Marvin Phillips for the loss and asked plaintiff to accompany him to Phillips' home. Phillips lived on the company's property and plaintiff and Gibson proceeded to go there. While returning plaintiff fell and sustained a compound fracture of both bones of the right leg, between the knee and ankle.

"Plaintiff was immediately taken to the hospital where he remained for eleven days. His injured leg was then placed in a heavy plaster cast and he was sent home. The cast remained on the leg for sixty-two days and when it was removed it was discovered that, while the bones had knitted, there was a swelling in the leg and that the injured leg was slightly shorter than the other.

"The defendant, through its insurance company, has changed its position on this case several times since the accident. The insurance company paid compensation until January, 1942 at which time it notified plaintiff that it believed that plaintiff had been injured while on a mission of his own and that the defendant was therefore not liable. It is interesting to note, however, that the defendant company cancelled its insurance policy on January 1, 1942. Later, and while depositions were being taken in the case, defendant filed a special answer alleging that plaintiff had not signed the compensation register.

"The first question presented is whether the plaintiff was engaged in the usual course of his employment at the time the accident occurred. Roscoe Gibson, testifying on behalf of the defendant, says that he was very drunk at the time but that he distinctly remembers that he and plaintiff went to Phillips' home to get another drink. Plaintiff says that he was only trying to stop the disturbance and that he accompanied Gibson to help find the lost articles and so get him off the premises. (Plaintiff was corroborated and Gibson contradicted by the testimony of Phillips). Under these circumstances we are not inclined to take the testimony of one who was admittedly drunk at the time. We therefore believe that plaintiff was performing his duty to his employer at the time he was injured.

"The second question presented concerns the signing of the register. Plaintiff says that he signed it and one Jake Redmond, a fellow employee, says that he and plaintiff signed it at the same time. Immediately after the accident the insurance company entered into an agreement with the plaintiff to pay him compensation. This compensation was paid, without question, until the defendant company cancelled its policy. The defendant, in an attempt to show that plaintiff had not signed, introduced Mr. Walter Asher, who was superintendent of the mine at the time plaintiff was injured. He merely says that he did not have charge of the register and that he does not remember whether plaintiff signed or not. Mr. J. E. Hendren, the present superintendent, testified from a compensation register which is introduced, but he admittedly did not keep the register and was not even in defendant's employ at the time plaintiff was hired. Plaintiff's name does not appear on this register but an examination of the register discloses that the first man to sign under index 'M' did so on the 27th day of November, 1939 which was after plaintiff started to work and after he claims to have signed. (A careful examination of the register convinces us that it was not put in use until November 25, 1939, fifteen days after plaintiff was employed by defendant). There must therefore have been another register preceding the one introduced and which defendant has failed to produce. With the positive and corroborated testimony of the plaintiff before us and the vague and uncertain testimony offered by the defendant together with the facts that defendant voluntarily paid compensation and did not raise the question until more than one year after the accident occurred we are inclined to believe that plaintiff did sign the register.

"Having determined that plaintiff is entitled to compensation, the only question remaining is the extent and duration of his disability. Disability is measured by the ability of the injured employee to do the kind of work he is, by training and experience, fitted to do. Dr. W. K. Evans says that plaintiff is 35% permanently disabled while Dr. S. H. Flowers says that he is 50% permanently disabled. Plaintiff was employed as a watchman and while his job requires some walking it cannot be said that it requires much heavy manual labor. Taking into consideration the nature of the injury and the kind of work plaintiff was employed to do before he sustained the in-

jury we conclude that he is now 33 1/3% permanently disabled. We also find that plaintiff was totally disabled for a period of ten weeks, that being the time he was in the hospital and while the leg was in the cast. It is admitted that plaintiff was paid $75.00 per month, making an average weekly wage of $17.30.

"The defendant has filed objections and exceptions to some of the testimony offered by plaintiff and to some of the cross examination by counsel for plaintiff. We have carefully read these questions and the answers thereto and fail to find anything in them prejudicial to defendant's rights and the said exceptions are therefore overruled."

Appellant has failed to cite the pages of the record filed in this Court where may be found the questions and answers excepted to before the Board and in the Circuit Court. We will not search the record for errors.

The judgment is affirmed.